**In re PAN AMERICAN HOSPITAL CORPORATION Pan American Medical Centers, Inc., Debtors.**

Bankruptcy Nos. 04–11819–BKC–AJC, 04–11820–BKC–AJC.

United States Bankruptcy Court, S.D. Florida, Miami Division.

July 17, 2007.

Grisel Alonso, Esq, Miami, FL, Patricia M. Arias, Esq, Miami, FL, Gregory P. Borgognoni, Miami, FL, William L. Blagg, Esq, Miami, FL, Leyza Florin Blanco, Grace E. Robson, Nelson E. Rodney, Miami, FL, Rachel S. Budke, Juno Beach, FL, Anthony J. Carriuolo, Michael I. Goldberg, Douglas R. Gonzales, Dora F. Kaufman, Philip J. Landau, James P. Paul, Craig A. Pugatch, Lisa M. Schiller, Scott R. Weiss, Ft. Lauderdale, FL, Francis L. Carter, Esq, James H. Fierberg, Luis Perez, Shelley Plass, Miami, FL, John K Cunningham, Lora Damiani, Terrence A. Dee, Scott A. Lazar, Thomas R. Lehman, Elisa R. Lemmer, Miami, FL, Kevin M. Eckhardt, Dallas, TX, Shana A. Elberg, Weil Gotshal & Manges LLP, Michael A. Frank, Glen Z. Goldberg, Lynn Maynard Gollin, Scott M. Grossman, Jack P. Har-

tog, Asst. County Atty, Ross R. Hartog, Jeffrey S. Hirsh, Jeffrey T. Kucera, Octavio L. Martinez, Louise H. McMurray, Robert C. Meyer, Steven Mishan, Hector O. Nava, D. Jean Ryan, Luis Salazar, Jodi E. Samuels, L H Steven Savola, David R. Softness, David R. Softness, Martin Sosland, Weil Gotshal & Manges LLP, Frank P. Terzo, Melinda S. Thornton, Kenneth Weil, Diane Noller Wells, Joel R. Wolpe, Miami, FL, John D. Emmanuel, Tampa, FL, Gregory G. Foster, Deirdre M. MacCarthy, Jacksonville, FL, Lenard H. Gorman, Corali Lopez–Castro, Robert M. Miller, Oliver Alan Ruiz, John S. Seligman, Peter D. Spindel, William M. Tuttle II, Coral Gables, FL, Reginald A. Greene, Esq., Atlanta, GA, Gerard M. Kouri Jr., Esq, Pembroke Pines, FL, Dahlia Paul, Hollywood, FL, Charles P. Schulman, Chicago, IL, Daniel P. Sinaiko, Morris, Manning & Martin, LLP, Atlanta, GA, Tina M. Talarchyk, West Palm Beach, FL, Eyal Berger, Kluger, Peretz, Kaplan & Berlin, P.L., Jacqueline Calderin, Robert P. Charbonneau, Miami, FL, for Creditors.

Eyal Berger, Kluger, Peretz, Kaplan & Berlin, P.L., Jacqueline Calderin, Robert P. Charbonneau, Miami, FL, for Debtor.

Steven D Schneiderman, Office of the U.S. Trustee, Miami, FL, for Office of the U.S. Trustee.

### ORDER OVERRULING THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS' OBJECTION TO FINAL FEE APPLICATION OF SAYBROOK CAPITAL, LLC. AND AWARDING FINAL FEES

A. JAY CRISTOL, Bankruptcy Judge.

THIS MATTER came before the Court for hearing on Tuesday, April 10, 2007, on

the Final Fee Application of Saybrook Capital, LLC ("Saybrook") as financial and capital markets advisors for Pan American Hospital Corporation and Pan American Medical Centers, Inc. (the "Debtors") and the Official Committee of Unsecured Creditors' Objection to the Final Fee Application of Saybrook ("Committee"). The Court has reviewed the pleadings and other papers submitted by the parties and is fully advised in the premises.

### BACKGROUND

On or about January 10, 2007, Saybrook filed an application for approval and payment of all outstanding fees including (i) final approval of compensation in the amount of $100,000 ("Paid Monthly Fees") for the reasonable and necessary professional services Saybrook has rendered to the Debtors for the period of September 6, 2005 through May 5, 2006, (ii) final approval and payment for the reasonable and necessary professional services that Saybrook has rendered to the Debtors for the period of May 6, 2006 through July 31, 2006 in the amount of $35,483.87, (the "Outstanding Monthly Fees") and (iii) final approval and payment of the Transaction Fee ("Final Fee Application")(C.P. # 2183).[1]

The Official Committee of Unsecured Creditors' ("Committee") filed an Objection to the Final Fee Application of Saybrook on or about February 27, 2007 ("Objection")(C.P. # 2398). The Committee does not object to that portion of the Final Fee Application seeking the payment of the Paid Monthly Fees and the Outstanding Monthly Fees as defined in the Final Fee Application. Rather, the Committee

---

1. Saybrook initially sought the amount of $481,250.00 but thereafter amended its Final Fee Application and now requests a Transaction Fee in the amount of $412,500 (plus the $25,000 due to Chanin Capital Partners, LLC pursuant to the Fee Splitting Order). See C.P. # 2551.

objects to an award of a Transaction Fee. The Committee's Objection is based primarily on the argument that the terms of Saybrook's retention entitled Saybrook to a Transaction Fee only if a sale of the Debtors' assets occurred within the Bid Process which "ultimately concluded with the highest bidder being Larkin Hospital not First Medical." The Committee argues that since no sale was consummated within that time frame, Saybrook is not entitled to the Transaction Fee.

Saybrook argues that there was never any agreement between Saybrook and other parties, let alone any order by this Court, which defined a time period after which the sale of the Debtors' assets would no longer entitle Saybrook to the Transaction Fee. Relying on its contractual right to collect the Transaction Fee upon consummation, Saybrook argues that it continued to expend substantial resources helping the Debtors evaluate potential sale transactions well after the point in time when Larkin Hospital was the highest bidder.

Upon consideration of the pertinent documents filed of record, the Court believes Saybrook is entitled to a Transaction Fee.

## A. SEPTEMBER 13, 2005 ENGAGEMENT LETTER AND SEPTEMBER 21, 2005 RETENTION APPLICATION (C.P. # 987)

On or about September 21, 2005, the Debtors filed the Application for Authorization to Employ Saybrook Capital, LLC as Financial and Capital Market Advisors for the Debtor in Possession Nunc Pro Tunc to September 6, 2006 (C.P. # 987). The Engagement Letter, attached to Brent Williams' Affidavit filed October 3, 2005 (C.P. # 1004), confirmed the agreement that the Debtors had engaged Saybrook to act as its financial and capital markets advisor. The third paragraph of the Engagement Letter defines the term Transaction as the following:

As used in this Agreement, the term "Transaction" means, whether effected directly or indirectly, (i) any sale or issuance of existing or new debt (including the establishment of a working capital bank facility), and (ii) any joint ventures/co-development projects or licensing/lease agreement, other than letters of interest received prior to the date of the (sic) this engagement letter.

Term 2 of the Engagement Letter specifies Saybrook's compensation to be as follows:

2. For Saybrook's services hereunder, the Company agrees to pay to Saybrook the following non-refundable fees in cash:

(a) A monthly cash advisory fee of $12,500 (each, a "Monthly Advisory Fee"), payable in advance for the period commencing on the date of this Agreement with the first payment due upon execution of this Agreement and subsequent payments due on each monthly anniversary of the date of this Agreement.

(b) A transaction fee or fees in an amount equal to 1.25% of each of (i) the principal or face value amount of any new debt raised including mortgage debt (including the total amount of any working capital facility, whether drawn or undrawn); and, if applicable,

An additional transaction fee of (i) In joint ventures/co-development projects in which Pan Am has significant ongoing operational involvement, 1% of the net present value ("NPV") of future net profits, allotted to Pan Am based on percentage interest, or (ii) In joint ventures/co-development projects in which Pan Am has no or limited operational involvement, 1% of

NPV of future licensing fees, management fees or other usage-based compensation.

Term 7 of the Engagement Letter (C.P. # 1004) specifies how a termination of Saybrook's engagement would affect its entitlement to the Transaction Fee as follows:

Saybrook shall be entitled to payment in full of the fees referred to in Section 2(b) if at any time prior to the expiration of 12 months after the Termination Date, (x) a Transaction is consummated (by virtue of the consummation, or if earlier, the effective date (or any similar term), of a Plan or otherwise) or (y) the Company enters into a letter of intent or any agreement that subsequently results in the consummation of a Transaction.

### B. OCTOBER 21, 2005 EMPLOYMENT ORDER (C.P. # 1042)

By this Court's order dated October 21, 2005 (C.P. # 1042) (the "Employment Order"), the Debtors were authorized to retain Saybrook, on the terms and conditions set forth in the Application (C.P. # 987), the Williams Affidavit (C.P. # 1004) and the Engagement Letter (C.P. # 1004). In addition to the Monthly Advisory Fee, Saybrook was also entitled to a transaction fee in an amount equal to 1.25% of the principal or face amount of any new debt raised including mortgage debt (the "Transaction Fee"). The specific duties that the Debtors required of Saybrook are set forth in detail in the Engagement Letter.

In addition to the above, the Employment Order revised the terms of the Engagement Letter by eliminating the additional Transaction Fee related to a joint venture or co-development project and changing the indemnification provision. The Employment Order specifically states that the exclusion of joint ventures and

similar transactions was without prejudice to any potential future modification of the scope of Saybrook's engagement. Term 4 of the Employment Order states:

4. The Debtor is authorized and empowered to employ Saybrook as its financial and capital market advisor in this Chapter 11 case pursuant to Section 327(a), and not Section 328, of the Bankruptcy Code, effective *nunc pro tunc* to September 6, 2005 on the terms set forth in the Application and the Engagement Letter is deemed modified to delete the language on Page 1, Paragraph 3(ii) from the definition of "Transaction" in the Engagement Letter, without prejudice to the Debtor seeking a modification of the scope of Saybrook's retention in the future.

Term 5 of the Employment Order addresses Saybrook's compensation:

5. Saybrook shall be entitled to receive monthly compensation of $12,500.00 (the "Monthly Advisory Fee") and the Transaction Fee pursuant to Section 327(a), as set forth in the Engagement Letter, subject to the following modification; Paragraph 20(b) of the Application is stricken and Term 2(b), ¶ 2 of the Engagement Letter, is stricken.

Importantly, Term 6 of the Employment Order provides for approval by the Court pursuant to 11 U.S.C. §§ 330 and 331 of all fees:

6. Award of the Monthly Advisory Fee and Transaction Fee is subject to Bankruptcy Court approval and the Court is not awarding or approving any such compensation at this time. Rather Saybrook shall file interim fee applications for compensation every sixty (60) days and all fees shall be subject to award by this Court pursuant to 11 U.S.C. §§ 330 and 331, and in accordance with the reasonableness standards of 11 U.S.C. § 330 . . . .

### C. MOTION TO MODIFY SAYBROOK'S RETENTION (C.P. # 1385) AND MARCH 20, 2006 MODIFICATION ORDER (C.P. # 1440)

On or about March 9, 2006, the Debtors filed a Motion to Modify the Scope of Retention of Saybrook ("Motion to Modify") (C.P. # 1385). The Motion to Modify sought authorization to expand the scope of Saybrook's retention to include advising the Debtors in connection with the Bid Process, including interfacing directly with prospective purchasers, facilitating due diligence, and evaluating potential sale transactions.

On March 20, 2006, the Court approved the Motion to Modify, thereby modifying the Employment Order to authorize Saybrook to assist the Debtors with a potential sale transaction and entitle Saybrook to a Transaction Fee in the event that a sale of the Debtors' assets occurs (the "Modification Order") (C.P. # 1440).

On November 27, 2006, an auction of the Debtor's assets was held. Metropolitan Health Community Corporation ("Metropolitan") was the successful bidder with the highest and best offer of $34 million. On December 6, 2006, the Court entered an order approving the sale of the property to Metropolitan free and clear of any and all liens, claims and encumbrances pursuant to 11 U.S.C. §§ 105 and 363(b).

Thus, the issue before the Court is whether Saybrook is entitled to a Transaction Fee and, if so, the amount of the Transaction Fee.

### ANALYSIS

■ The Committee argues the scope of Saybrook's retention never contemplated an award of a Transaction Fee for the sale of the Debtor's assets outside of the "Bid Process". The Court disagrees. The Committee's assertion is disproved by the terms of Saybrook's engagement, as specified in the Modification Order and the Motion to Modify. Term 2 of the Modification Order states:

2. The Prior Order is modified as follows:

(a) Saybrook is authorized to assist and advise the Debtor in connection with the Bid Process;

(b) in the event of a sale or assignment of the Debtor's assets in connection with the Bid Process to any of the Initial 24, Saybrook shall be entitled to compensation under the same terms set forth in the Engagement Letter as though the GMAC transaction had been consummated; and

(c) in the event of an assignment or sale of the Debtor's assets to a party other than one (sic) the Initial 24, Saybrook shall be entitled to a transaction fee or fees in an amount equal to 1.25% of the gross purchase price, minus assumed liabilities.

A footnote to Term 2 of the Modification Order stated that all capitalized terms shall have the meaning so ascribed to such terms in the March 8, 2006 Motion to Modify. Term 8 of the Motion to Modify defined the term Bid Process as "a streamlined and organized bidding process", per the following excerpt:

8. However, in the interest of satisfying its fiduciary duty to creditors of the estate, and subsequent to good faith negotiations with the Debtor's largest unsecured creditor, Credit Suisse First Boston et al ("CSFB") and the Official Committee of Unsecured Creditors (the "Committee"), the Debtor has agreed to solicit firm offers for purchase of the Debtor's assets from potential acquirers through a streamlined and organized bidding process (the "Bid Process"), subject of a separate motion which the

Debtor will be filing contemporaneous with the instant motion.

Neither the Modification Order nor the Motion to Modify, nor any other Order of the Court, defined the term Bid Process as a finite period of time after which Saybrook would no longer be eligible for a Transaction Fee in the event of a sale of the Debtors' assets.

The Court has reviewed the Employment Order and Modification Order and finds no time limitation or expiration date for Saybrook's entitlement to the Transaction Fee. Although the Modification Order describes a "Bid Process", the term "Bid Process" was not defined as a finite time period after which Saybrook was no longer eligible for the Transaction Fee. The process of soliciting bids for the Debtors' assets was initiated by the Examiner in May 2005 and continued through the sale of the Debtors' assets to Metropolitan pursuant to the Sale Motion (C.P. # 2020).

The Modification Order provides that Saybrook is entitled to compensation under the same terms set forth in the Engagement Letter as though the GMAC transaction had been consummated if the sale was to any of the Initial 24 as defined in the Modification Order. All parties are in agreement that the buyer of the Debtors' assets, Metropolitan, is a related party to one of the Initial 24 as set forth and defined in the Modification Order. Therefore, the Court believes Saybrook is entitled to the Transaction Fee, however the Court does not necessarily agree the fee should be calculated as if the GMAC financing was concluded.

The Court is not persuaded by the Committee's argument that, at the time of the hearing on the Fee Splitting Motion in September 2006, the Bid Process had concluded, and therefore, at that time, Saybrook's and Chanin's entitlement to a Transaction Fee resulting from a sale of the Debtors' assets had terminated. The Debtors' Fee Splitting Motion confirms that "Mr. Williams will continue to work with the Debtors under the terms approved in the Employment Order" and specifies that the Employment Order is "as modified by Order dated March 21, 2006 (C.P. # 1440)," and the March 21, 2006 Modification Order states that Saybrook will receive the Transaction Fee in the event of the sale of the Debtors' assets.

The Fee Splitting Order entered by this Court on October 3, 2006 (C.P. # 1994) authorized (i) Mr. Williams, at his new employer Chanin, to continue to advise the Debtors on potential sale transactions and (ii) Saybrook and Chanin to share the Transaction Fee that would result from such a transaction. The first paragraph of the Order states:

This matter came before the Court on Thursday, September 14, 2006 at 2:00 p.m. on the Motion (the "Motion") of Pan American Hospital Corporation ("PAH") and Pan American Medical Centers, Inc. ("PAMC") (collectively the "Debtors"), for the entry of an Order of this Court authorizing Brent Williams to continue to represent the Debtors as their financial and capital market advisor in this case and to authorize a fee splitting arrangement between Saybrook Capital, LLC ("Saybrook") and Chanin Capital Partners LLC ("Chanin").

Accordingly, the Court believes the Bid Process was still ongoing at the time that the Fee Splitting Order was entered. On or about October 24, 2006, the Debtors filed the Sale Motion (C.P. # 2020). The Sale Motion evidences that the "Bid Process" was still in progress as late as October 2006 and the Fee Splitting Order contemplates the entitlement of a Transaction Fee for Saybrook as of that date.

## CALCULATION OF SAYBROOK TRANSACTION FEE

[2]  Saybrook voluntarily amended and reduced the amount sought for the Transaction Fee. As set forth in Saybrook's Final Fee Application, Saybrook sought a Transaction Fee in the amount of $481,250.00. However, upon review, Saybrook agrees that the buyer of the Debtors' assets, Metropolitan, is a related party to one of the Initial 24 as set forth and defined in the Modification Order and therefore, the calculation of the Transaction Fee should be as set forth in the Modification Order.  Saybrook amended its Final Fee Application and now requests a Transaction Fee in the amount of $412,500 (plus the $25,000 due to Chanin Capital Partners, LLC pursuant to the Fee Splitting Order).  Saybrook's calculation of the Transaction Fee is shown below:

| | |
|---|---|
| GMAC Credit Facility | 35,000,000.00 |
| | × 1.25% |
| Total Transaction Fee | 437,500.00 |
| Less: Amount to Chanin Capital Partners, LLC | (25,000.00) |
| Saybrook Transaction Fee | $412,500.00 |

In addition to Saybrook's calculation of the fee, there are other methods of calculating the Transaction Fee. One alternative method of calculating the Transaction Fee is based upon Saybrook's efforts in establishing the fair market value for the sale of the assets in the initial Bid Process.  The other way to calculate the benefits Saybrook provided is by attributing the difference between the initially established fair market value and the ultimate sale price to Saybrook's efforts; no doubt Saybrook facilitated the Bid Process in such a way that Qualified Bidders at the Auction bid enthusiastically, thus resulting in a much higher sale price relative to the fair market value of the property.

Under the first formula, it can be reasoned that Saybrook benefitted the estate by assisting the Debtor in establishing the fair market value of the assets. As a result of Saybrook's efforts, PAHRH Recovery Holdings, LLC ("PAHRH") valued the property in the amount of $17,700,000 in the Asset Purchase Agreement ("APA") that was approved by this Court. Therefore, the benefit to the estate rendered by Saybrook is in having established the fair market value of the assets at the amount of PAHRH's bid:

| | |
|---|---|
| Established Market Value | 17,700,000.00 |
| | × 1.25% |
| Total Transaction Fee | 221,250.00 |
| Less: Amount to Chanin Capital Partners, LLC | (25,000.00) |
| Saybrook Transaction Fee | $196,250.00 |

Alternatively, Saybrook's benefit to the estate can be calculated by the assistance it provided the Debtors in obtaining the final APA from Metropolitan with a purchase price of $34,000,000, roughly double the established fair market value of the assets.  Under this reasoning, Saybrook's services can be viewed as establishing a competitive marketplace for the sale of the assets that resulted in the Qualified Bidders increasing their bids from the fair market value to the ultimate sale price of $34,000,000.  Under this calculation, the Transaction Fee is as follows:

| | |
|---|---|
| Metropolitan's Purchase Price | 34,000,000.00 |
| Fair Market Value of Property | (17,700,000.00) |
| Benefit to the Estate | 16,300,000.00 |
| | × 1.25% |
| Total Transaction Fee | 203,750.00 |
| Less: Amount to Chanin Capital Partners, LLC | (25,000.00) |
| Saybrook Transaction Fee | $178,750.00 |

The Court finds that Saybrook is entitled to a Transaction Fee; however, the Court does not agree with Saybrook's calculation of that Transaction Fee. Per the language of paragraph 6 of the Employment Order, "all fees shall be subject to award by this Court pursuant to 11 U.S.C. §§ 330 and 331, and in accordance with the reasonableness standards of 11 U.S.C. § 330."  Section 330(a)(1)(A) authorizes compensation to professionals of "reason-

able compensation for actual, necessary services", and section 330(a)(2) states that "the court may, on its own motion..., award compensation that is less than the amount of compensation that is requested." This Court exercises the discretion authorized by the Code in calculating Saybrook's Transaction Fee.

This Court measures the value of a professional's services in terms of its material benefits provided to the bankruptcy estate. Saybrook undisputably provided a valuable service to the Debtor with their assistance in evaluating and analyzing potential sales transactions, as well as their continued assistance up to the point at which Mr. Williams left Saybrook to join Chanin. In addition, Saybrook also managed the process of soliciting exit financing proposals, assisted the Debtor and Chapter 11 Examiner in preparing due diligence information to give to prospective bidders, and provided expert testimony in various Court hearings in connection with the case.

Based on the foregoing, the Court believes Saybrook is entitled to a Transaction Fee in the amount of $271,816.00, which sum **includes** the $25,000.00 for Chanin, for the reasonable and necessary professional services rendered to Debtors. It is possible that the Debtors could have terminated Saybrook or renegotiated or modified the contractual relationship between the parties, but they did not. Thus, Saybrook is entitled to a Transaction Fee, pursuant to the Modified Order, "under the same terms set forth in the Engagement Letter as though the GMAC transaction had been consummated," *subject to the discretion of the Court to modify same pursuant to 11 U.S.C. §§ 330 and 331.* Accordingly, the Court calculated 1.25% of the GMAC transaction in the amount of $35,000,000 or $437,500 (which includes the $25,000 for Chanin) less amounts paid or payable for Monthly Fees

in the sum of $135,483.00, and reduced further by 10% as was consistent with the fee reductions taken voluntarily by the professionals in this case.

It is hereupon

**ORDERED AND ADJUDGED** that:

1. The objections of (i) the Official Committee of Unsecured Creditors; (ii) PAH Recovery Holdings, LLC; and (iii) the United States Trustee are OVERRULED.

2. Saybrook's Final Fee Application is approved as set forth herein.

3. Saybrook is awarded (i) final fees in the amount of $100,000 ("Paid Monthly Fees") for the reasonable and necessary professional services Saybrook has rendered to the Debtors for the period of September 6, 2005 through May 5, 2006 to which there has been no objection and which were previously approved at the Confirmation Hearing held on March 1, 2007; (ii) final approval and payment for the reasonable and necessary professional services that Saybrook has rendered to the Debtors for the period of May 6, 2006 through July 31, 2006 in the amount of $35,483.87 to which there has been no objection and which were previously approved at the Confirmation Hearing held on March 1, 2007 (the "Outstanding Monthly Fees"); and (iii) final approval and payment in the amount of $271,816.00, **which sum includes $25,000 for Chanin,** as the Transaction Fee for reasonable and necessary professional services rendered to the Debtors.